# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTINE MENGEL, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| READING EAGLE COMPANY, | : | No. 11-6151 |
| Defendant. | : | |

## M E M O R A N D U M

**STENGEL, J.**                                                       March 28, 2013

      This is an employment action filed by Plaintiff, Christine Mengel against Reading Eagle Co. alleging discrimination based on her gender and disability. For the following reasons, I will grant the defendant's motion for summary judgment.

## I. BACKGROUND

      Ms. Mengel was employed as a copy editor, then as a page designer at Reading Eagle Company since 1999. Mengel Dep. 14:16–15:3. Grant Mahon, a design editor at Reading Eagle, was Ms. Mengel's immediate supervisor. Mahon Dep. 6:7–8; 11:1–16. Mr. Mahon reported to David Mowery, Reading Eagle's managing editor. Mowery Dep. 6:21–7–17. Mr. Mowery reported to Harry Dietz, Reading Eagle's editor. Mahon Dep. 8:21–9–4.

      Mr. Mahon gave Ms. Mengel her annual performance evaluations. Mahon Dep. 11:11–16. Mr. Mahon gave Ms. Mengel satisfactory evaluations from 2001 to 2008. Doc. No. 20-8.

Starting in November, 2007 Ms. Mengel became totally deaf in one ear and had balance problems due to surgery removing a brain tumor. Mengel Dep. 41:13–18; 43:22–44:1. Ms. Mengel was able to continue performing her job functions without accommodation, but had difficulty concentrating. Mengel Dep. 45:8–20. Ms. Mengel received a satisfactory evaluation in 2008, very soon after her deafness and balance problems arose. Mengel Dep. 14:14–17; Doc. 20-8 at 9. Ms. Mengel's supervisors at Reading Eagle, including Mr. Mahon and Mr. Mowery, were aware that Ms. Mengel had problems with her hearing and balance. Mengel Dep. 70:14–21; Mowery Dep. 31:3–9.

In September 2008, Ms. Mengel had a meeting with Mr. Mahon, Mr. Mowery, and Bill Reber, one of her co-workers. Mengel Dep. 25:5–14. At this meeting, Mr. Reber complained that Ms. Mengel did not "follow his instructions" and called her a "tar baby." Mengel Dep. 26:1–5. Ms. Mengel felt by using the term "tar baby," Mr. Reber was "trying to demean [her], make [her] feel small." Mengel Dep. 39:9–24.

In January 2009, Reading Eagle decided to perform a reduction in force layoff. The exact number of employees that would be laid off was determined in March. Mowery Dep. 23:3–13. Reading Eagle performed the reduction in force by rating its employees on a matrix and eliminating the lowest scoring employees. Mowery Dep. 28:7–14.

The categories for the reduction in force matrix were (1) work quality out of 6, (2) versatility out of 10, (3) inter-personal/teamwork skills out of 6, (4)productivity out of 6, (5) disciplinary record out of 6, (6) performance evaluations out of 6, and (7) tenure with the company out of 6. Doc. No. 20-14.

Mr. Deitz, Mr. Mowery, and Mr. Mahon completed Ms. Mengel's reduction in force matrix.  Id.  The reduction in force matrix for Ms. Mengel was filled in on March 18, 2009.  Mowery Dep. 28:15–18.  Ms. Mengel received the lowest matrix score in her department.  Doc. No. 20-16.  She received a score of 13, while the next lowest score was a 24.  Id.  Her score in performance evaluations was 2 out of 6.  Doc. No. 20-14.

Ms. Mengel complained about the "tar baby" comment in her undated, annual self-evaluation.  Doc. No. 20-11.  On April 10, 2009, Ms. Mengel notified Mr. Deitz that she thought "that an arbiter outside and independent of the company, such as the human relations council, might be better suited for conducting an unbiased and truly fair investigation" of the "tar baby" incident.  Doc. No. 20-12.  On April 20, 2009, Ms. Mengel filed a complaint with the EEOC for gender discrimination, disability discrimination, and retaliation. Doc. No. 16-2 at 31–34.

On April 30, 2009, Reading Eagle executed its reduction in force.  Ms. Mengel was among the terminated employees.  Mowery Dep. 28:20–22.  Out of the three employees in Ms. Mengel's department who were terminated in the reduction in force, the other two were male.  Doc. No. 20-17.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  A factual dispute is "material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  For an issue to be "genuine," a reasonable fact-finder must

be able to return a verdict in favor of the non-moving party. Id.

A party moving for summary judgment always bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing relevant portions of the record, including depositions, documents, affidavits, or declarations, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c). Summary judgment is therefore appropriate when the non-moving party fails to rebut the moving party's argument that there is no genuine issue of fact by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322; Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir.1992).

Under Rule 56, the Court must draw "all justifiable inferences" in favor of the non-moving party. Anderson, 477 U.S. at 255. The Court must decide "not whether ... the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Id. at 252. The nonmoving party cannot avert summary judgment with speculation or conclusory allegations, such as those found in the pleadings, but rather, must present clear evidence from which a jury can reasonably find in its favor. Ridgewood Bd. of Educ. v. N.E. for

4

M.E., 172 F.3d 238, 252 (3d Cir.1999). Finally, in reviewing a motion for summary judgment, the Court does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion. Siegel Transfer v. Carrier Express, 54 F.3d 1125, 1127 (3d. Cir.1995).

## III. DISCUSSION[1]

Ms. Mengel asserted claims under gender discrimination, disability discrimination, retaliation, and the PHRA. She exhausted her administrative remedies by filing a complaint with the EEOC.[2] Ms. Mengel has conceded that there is no direct evidence of discrimination, and that she is proceeding under the indirect McDonnell-Douglas framework.[3] Doc. No. 19 at 14. For the reasons discussed below, Ms. Mengel has not proven her case for any of the claims asserted in her Complaint. She has not presented a

---

[1] Claims under the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. are analyzed identically to the analogous federal claims. Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1084 (1995).

[2] Reading Eagle's argument that the EEOC complaint does not address her termination is without merit. The complaint was filed prior to her termination, but the termination occurred during the EEOC investigation. Under Third Circuit precedent, "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, . . ., including new acts which occurred during the pendency of proceedings before the Commission. Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398–99 (3d Cir. 1976) (citations omitted). It can reasonably be expected that the EEOC would have investigated Ms. Mengel's termination due to her complaint about gender discrimination, disability discrimination, and retaliation and since her termination occurred during the EEOC investigation. See id. at 399 (EEOC complaint about gender discrimination in one bargaining unit sufficient basis for suit by member of other bargaining unit). Reading Eagle's interpretation of administrative exhaustion would require plaintiffs to repeatedly file EEOC complaints for each purported violation even while there is an ongoing investigation. Cf. Sydnor v. Fairfax County, Va., 681 F.3d 591, 594 (4th Cir. 2012) (by requiring that "claims in judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation," the court is able to "strike a balance between providing notice to employers and the EEOC on the one hand and ensuring plaintiffs are not tripped up over technicalities on the other.")

[3] Ms. Mengel also asserts in her brief that her termination was due to mixed motives. Since she has conceded that there is no direct evidence of discrimination, i.e., that no decision maker at Reading Eagle expressed gender or disability bias, this assertion is without merit. Doc No. 19 at 13 ("Defendant launches its attack on Plaintiff's discrimination claims by stating the obvious: that Plaintiff has no direct evidence of discriminiation. This is correct."); Fakete v. Aetna, Inc., 308 F.3d 335, 338–39 (3d Cir. 2002).

5

prima facie case for her claims of disability discrimination or retaliation and she has not met her burden for her gender discrimination claim.

**A. Ms. Mengel does not state a prima facie case for disability discrimination**

"A plaintiff presents a prima facie case of discrimination under the ADA by demonstrating: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." Gaul v. Lucent, 134 F.3d 576 (3d Cir. 1998); 42 U.S.C. § 12112(a). If the plaintiff presents a prima facie case, the employer then has the burden of producing a legitimate, nondiscriminatory reason for the adverse employment action. Raytheon Co. v. Hernandez, 540 U.S. 44, 49 n.3 (2003); see also McDonnell Douglas Corp v. Green, 411 U.S. 792, 802 (1973) (Title VII). The plaintiff can then rebut this by showing that the employer's reason is pretextual. McDonnell Douglas, 411 U.S. at 802.

Drawing all possible inferences in Ms. Mengel's favor, she was qualified to perform the essential functions of her job since her employer rated her performance in the job as satisfactory even after her purported disability arose. She was terminated, which is an adverse employment determination. The remaining questions are whether she was disabled, and if she was, whether the adverse employment determination was due to that disability.

A person is disabled if he or she "(A) [has] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) [has] a

record of such impairment; or (C) [is] being regarded as having such an impairment." 42 U.S.C. § 12102(2).  Through regulation, the EEOC has determined that "deafness substantially limits hearing," that hearing is a major life activity, and therefore a deaf person is disabled.  29 C.F.R. § 1630.2(j)(3)(iii); see also Howze v. Jefferson Country Committee For Economic Opportunity, No. 2:11-CV-52-VEH, at *11 (N.D. Ala. Aug. 28, 2012) (bilateral hearing loss is a disability under current law).[4]

However, Ms. Mengel only provided evidence of hearing loss in one ear rather than bilateral deafness.[5]  At her deposition, she testified that she was still able to hear even though she is deaf in one ear, Mengel Dep. 46:17, but that she had difficulty hearing in noisy environments such as the newsroom in which she worked.  Mengel Dep. 45:2–3.

Although only persuasive authority, the court in Durrenberger v. Texas Dept. of Criminal Justice. 757 F.Supp.2d 640 (S.D. Tex. 2010), applied the ADA Amendments to facts similar to the case at hand.  Id. at 649 (citing ADA Amendments Act of 2008 and 29 C.F.R. § 1630.2(j)(1)).  In that case, the Plaintiff, Mr. Durrenberger, provided evidence of

---

[4] In its briefs, Reading Eagle cites to numerous cases interpreting disability in a narrow way as to prevent hearing impairment from being a disability.  These cases are questionable to the extent they rely on the holding of Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999) and its progeny.  Lynch v. Mattews Intern., 430 Fed. Appx. 109, 111 n.1 (3d Cir. 2011) ("We note that with the passage of the ADA Amendments Act of 2008, Sutton would not be controlling if the conduct occurred today.")  Through the ADA Amendments Act of 2008, P.L. 110-325, Congress expressly broadened the scope of what qualifies as a "disability."  See generally Sorey v. YRC Inc., No. 3:11-cv-0859, 2012 WL 5865369, at *6(M.D. Tenn. Nov. 19, 2012). Compare Marinelli v. City of Erie, Pa., 216 FG.3d 354, 362 (3d Cir. 2000) ("[O]nly extremely limiting disabilities-either in the short or long-term" [] qualify for protected status under the ADA."); Andreoli v. Gates, 482 F.3d 641, 651 (3d Cir. 2007) (post-traumatic stress disorder and severe depression are not disabilities) with P.L. 110-325 § 2(7) (courts have "interpreted the term 'substantially limits' to require a greater degree of limitation than was intended by Congress"); and 29 C.F.R. § 1630.2(j)3)(iii) ("major depressive disorder, . . ., [and] post-traumatic stress disorder . . . substantially limit brain function).  For this reason, I do not rely on Dlugos v. Eastman Kodak, Co., even though it confronts a similar facts to the instant case.  Civil Action No. 95-1525, 1996 WL 679411 (W.D. Pa. Sep. 5, 1996).

[5] While Ms. Mengel also suffered from balance problems, she did not present evidence of the severity of her balance problems or how it limited her life activities, if at all.  See Mengel Dep. 54:21–55:4 ("Q: Did your balance issues affect your work at all? A. Well, no. Maybe – well, as long as I was sitting down, but, you know, sometimes I had to get up and move around. Q: And your work was primarily performed sitting down; is that correct? A: Yes.").

7

partial deafness in his right ear. Id. at 650–51. Unlike Ms. Mengel, Mr. Durrenberger provided the court with a letter from a clinical audiologist which described the extent of Mr. Durrenberger's hearing loss. Id. at 650. The court found that the even though Mr. Durrenberger had partial hearing loss in his right ear, he had not provided sufficient evidence of a disability to withstand summary judgment. Id. at 650–51 ("[H]aving hearing difficulty visiting in a noisy room is not substantially limiting considering others also have difficulty in the noisy environment.").

Likewise, Ms. Mengel failed to present evidence that her hearing loss in one ear substantially limited her hearing. See 29 C.F.R. §§ 1630.2(j)(1)(ii) (even under post-ADAAA regulations, "not every impairment will constitute a disability within the meaning" of the ADA"), (4)(i) (substantial limitation is determined based on the extent the impairment interferes with major life activities). She testified that her deafness in her left ear was not a distraction, Mengel Dep. 46:11–13, and she did not mention any specific instances where her hearing loss caused a problem other than that she "didn't hear some things." Mengel Dep. 46:17–47:9.

Ms. Mengel does present evidence that she may have been regarded as disabled. "[A] plaintiff meets the requirement of being 'regarded as' disabled if she establishes discrimination 'because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity'" Estate of Murray v. UHS of Fairmount, Inc., Civ. Act. No. 10-2561, 2011 WL 5449364, at *8 (E.D. Pa. Nov. 10, 2011) (citing 42 U.S.C. § 12102(3)(A)); see also id. n.18 (noting that Sulima v. Tobyhanna Army Depot, 602 F.3d 177 (3d Cir. 2010) was legislatively

superseded). The decision makers at Reading Eagle, including Mr. Mahon, were aware that Ms. Mengel had balance problems related to her brain tumor surgery. Mahon Dep. 14:13–15 ("I was aware, after [Ms. Mengel's] return from surgery, that she would sometimes experience dizziness."). This is sufficient to show that she may have been regarded as disabled. Id. at *9 ("[b]ecause the ADAAA no longer requires a showing that [the plaintiff's] impairment was perceived to substantially limit a life activity," all that the plaintiff needs to do to raise a genuine issue of material fact for the "regarded as" disabled prong is show that a supervisor knew of the purported disability).

However, Ms. Mengel has not produced evidence of a causal link between her alleged disabilities and her termination. At the summary judgment stage, an ADA plaintiff must provide evidence that supports a logical inference of causation between the alleged disability and the adverse employment action. See Purcell v. Pennsylvania Department of Corrections, No. Civ. 00-181J, 2006 WL 891449 (W.D. Pa. 2006) (citing Yeskey v. Pennsylvania Department of Corrections, 118 F.3d 168 (3d Cir. 1997), aff'd, 524 U.S. 206 (1998)) (punishment for actions not caused by prisoner's neurological disorder not subject to ADA). Ms. Mengel lost hearing in her ear and had balance problems starting in late 2007, yet she was terminated in April 2009. This long gap of time, the absence of other evidence regarding Reading Eagle's consideration of Ms. Mengel's hearing loss and balance problem, and Ms. Mengel's satisfactory evaluation shortly after her surgery refute the necessary causation. See Shaner v. Synthes, 204 F.3d

9

494, 504–05 (3d Cir. 2000) (applying similar analysis to causation element of ADA retaliation claim).[6]

**B. Ms. Mengel has stated a prima facie gender discrimination case**

To present a prima facie case of gender discrimination in a reduction-in-force circumstance, a plaintiff must show that "(1) she belonged to a protected class, (2) she was qualified for the position from which she was terminated, (3) she was terminated and (4) persons outside of the protected class were retained." In re Carnegie Center Associates, 129 F.3d 290, 294–95 (3d Cir. 1997).

Ms. Mengel is a female, so she is a member of a protected class. Levendos v. Stern Entertainment, Inc., 860 F.2d 1227, 1230 (3d Cir. 1988). Even in the final evaluation, just a few weeks prior to her termination, Ms. Mengel's job performance was rated as satisfactory, so she was qualified for her position. Mahon Dep. 11:21–13:3. Reading Eagle terminated her employment, and Reading Eagle had male employees with identical responsibilities to Ms. Mengel who were retained through the reduction in force. Doc. No. 20-17. Therefore, Ms. Mengel has presented a prima facie case of gender discrimination, which places the burden of production on Reading Eagle to show a legitimate, nondiscriminatory reason for Ms. Mengel's adverse employment action. Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1070, 1079 (3d Cir. 1996).

---

[6] Ms. Mengel also argues that the short time between her request for leave and her termination is evidence of causation. Doc. No. 19 at 7. However, Reading Eagle had already performed her evaluation and made the decision to terminate her prior to her request for leave, so this fails to show causation. See Duggins v. Appoquinimink School Dist., C.A. No. 12-72-MPT, 2013 WL 472283, at *3 (D. Del. Feb. 5, 2013) ("No explanation is presented regarding how the [employer] could make an unlawful employment action based on a medical condition, the extent of which it was unaware of during the time of the decision making process, which eliminates a causal link between [the plaintiff's] medical condition and [the adverse employment action].")

**C. Reading Eagle presented a legitimate, nondiscriminatory reason for terminating Ms. Mengel, and Ms. Mengel has not shown sufficient evidence of pretext to overcome summary judgment**

Reading Eagle has produced legitimate, nondiscriminatory reasons for terminating Ms. Mengel since it has introduced admissible evidence that demonstrates its reasons. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981); Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1070, 1079 (3d Cir. 1996). Reading Eagle downsized its workforce and terminated employees in order of their performance ratings. Reading Eagle has produced the matrices and criteria that it used to rank employees. Ms. Mengel had by far the lowest performance rating of any employee in her department. In addition to terminating Ms. Mengel, Reading Eagle also terminated the two employees in her department with the next lowest performance ratings, who were both men.

To create a fact issue for pretext, Ms. Mengel must "submit evidence which: (1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or (2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994).

For the first prong, Ms. Mengel argues that the 2009 performance rating was fabricated since her prior performance evaluations were consistently better than the 2009 evaluation. I am not persuaded by this argument. The courts generally do not second-guess the wisdom of a business' performance evaluations and ratings of its employees,

see, e.g., E.E.O.C. v. Dart Container Corp., Civil Action No. 08-5535, 2012 WL 1969062, at *9 (E.D. Pa. June 1, 2012) (Stengel, J.), but even making all inferences in Ms. Mengel's favor, she would still have been laid off even if she had received a perfect score in the "Performance Evaluations" category. Doc. 20-14.[7] Ms. Mengel received a total score on her matrix of 13. Id. If she had received a perfect score in "Performance Evaluations," she would have had a total score of 17. Id. The other employees who were laid off had total scores of 24. Doc. 20-17. Therefore, she still would have been laid off based on her low score.

Ms. Mengel also fails the second prong of the test. Ms. Mengel's department had nine employees: three female, six male. Doc. 20-17. Out of the three layoffs, one, Ms. Mengel, was female, while the other two were male. Id. Under these facts, no reasonable factfinder could conclude that it was more likely than not that Ms. Mengel's gender was the "motivating or determinative cause" of her termination. Cf. Bruno v. W.B. Saunders Co., 882 F.2d 760, 766–67 (3d Cir. 1989) (citing Bazemore v. Friday, 478 U.S. 385, 400 (1986); International Brotherhood of Teamsters v. United States, 431 U.S. 324 (1977)) ("in individual disparate treatment cases," comparison of treatment of employees in plaintiff's protected class with treatment of employees not in protected class is relevant to pretext).

---

[7]Ms. Mengel has only challenged her score in the "Performance Evaluations" category of the matrix.

**D. Retaliation**

In order to survive summary judgment, a Title VII retaliation plaintiff must present a prima facie case of retaliation.[8] A prima facie case of retaliation consists of (1) a protected activity, (2) an adverse employment action, and (3) a causal link between the protected activity and the adverse employment action. Moore v. Philadelphia, 461 F.3d 331, 340–41 (3d Cir. 2006) (citing Barber v. CSX Distribution Servs., 68 F.3d 694, 702 (3d Cir. 1995)). This then shifts the burden of production "to the employer to advance a legitimate, non-retaliatory reason for its conduct." Moore, 561 F.3d at 342.[9]

Title VII protects activities of employees to oppose employment practices made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). The retaliation plaintiff is not required to show that the practice they opposed was actually unlawful; instead, they must have held "an objectively reasonable belief, in good faith, that the activity that they oppose[d] is unlawful under Title VII." Moore, 461 F.3d at 341 (citing Clark County Sch. Dist. v. Breeden, 532 U.S. 268 (2001) (per curiam)). Complaining to a manager about a specific unlawful practice is a protected activity, Abramson v. William Paterson College, 260 F.3d 265, 286–87 (3d Cir. 2001) (citing Barber, 68 F.3d at 701–02), as is filing an EEOC complaint, but only if it was both objectively reasonable and in good faith for the employee to believe that the activity they opposed was unlawful.

---

[8] Ms. Mengel has not asserted an ADA retaliation claim.

[9] If the employer provides a legitimate, non-retaliatory reason for its conduct, the plaintiff must then produce sufficient evidence to show that the reason is a pretext. Sarullo v. United States Postal Serv., 352 F.3d 789, 799–800.

13

The only particular action that Ms. Mengel complained about was Mr. Reber's "tar baby" comment. "Tar baby" is sometimes used as a racial slur, although it can also be used as to mean a complication. Compare Carroll-Pitts v. Free Library of Philadelphia, Civil Action No. 07-02716, 2008 WL 4540420, at *10 (E.D. Pa. Oct. 3, 2008) (characterizing "tar baby" as a racial slur) with Perez v. Secretary of Health and Human Services, No. 05-1261V, 2008 WL 763301, at (Fed. Cl. March 4, 2008) (using "tar baby" in a metaphor); Carroll-Pitts v. City of Phila. Free Library of Phila., 2008 U.S. Dist. LEXIS 78682 (E.D. Pa. Oct. 3, 2008) ("Tar baby" is a racially derogatory term, and not a gender-based term); and Paul v. Wyeth Pharms., Inc., 2008 U.S. Dist. LEXIS 15482 (S.D.N.Y. Feb. 29, 2008) (stating that "in Webster's dictionary . . . tar baby does not have a racial connotation, but refers to [a] situation which one has a hard time extricating themselves from.").

Objectively, it is not reasonable for an employee to believe that a single, potentially racist remark could violate Title VII. Clark County School Dist. v. Breeden, 532 U.S. 268, 271 (2001) (complaining about single inappropriate sexual comment is not protected activity); Robinson v. Cavalry Portfolio Services, LLC, 365 Fed. Appx. 104, 111–12 (10th Cir. 2010) (complaining about single racist comment is not protected activity) (citing Jordan v. Alternative Res., Corp., 467 F.3d 378, 380 (4th Cir. 2006) (opinion supporting denial of en banc hearing); cf. Theriault v. Dollar General, 336 Fed. Appx. 172, 174 (3d Cir. 2009), aff'g No. 2:07-cv-227, 2008 WL 2184977 (W.D. Pa. May 22, 2008) ("single, isolated comment falls so far short of the type of severe and pervasive

harassment needed to constitute unlawful discrimination that [retaliation] plaintiff could not have had a good faith, reasonable belief that Title VIII was being violated").

In terms of good faith, Ms. Mengel's objection to Mr. Reber calling her a "tar baby" was "[t]hat he was trying to demean [her], make [her] feel small." Mengel Dep. 39:9–24. Ms. Mengel interpreted Mr. Reber's usage of the term as bullying rather than being due to racial or gender-related animus.[10] Mengel Dep. 39:21–24; CSX Distribution Services v. Barber, 68 F.3d 694, 702 (3d Cir. 1995) (plaintiff has not engaged in protected activity when he complains that he was treated unfairly rather than unlawfully). She failed to show that her complaint to her managers was made with a good faith belief that the "tar baby" comment was unlawful.

It was not objectively reasonable for Ms. Mengel to believe that Mr. Reber's "tar baby" statement was unlawful under Title VII, and her complaints were not made with a good faith belief that the "tar baby" comment was unlawful rather than just demeaning. Therefore, her informal complaint to her managers and her EEOC complaint about the "tar baby" comment were not protected activities.[11]

Even if the informal complaint or EEOC complaint were protected activities, Ms. Mengel has failed to show causation for the informal complaint, and Reading Eagle has advanced a legitimate, non-retaliatory reason for her dismissal, which Ms. Mengel has not shown to be pretextual. Due to the timing of Reading Eagle's lay-off decision-

---

[10] While it is not dispositive, I also note that Ms. Mengel is Caucasian. Deitz Affidavit, Doc. No. 16-2 at 10–11.

[11] Even if she could present a prima facie case of retaliation, she would not be able to overcome Reading Eagle's legitimate, non-retaliatory reasons for her termination, which would parallel Reading Eagle's legitimate, nondiscriminatory reasons for her termination discussed supra.

15

making, the complete lack of direct evidence for causation, and the length of time between her internal complaint and termination, Ms. Mengel would be unable to show both causation and pretext for the informal complaint. While the EEOC complaint occurred with temporal proximity to her termination, in order to show pretext she would essentially need show that the entire reduction in force was a hastily-designed cover-up to retaliate against her. This theory is implausible, so it does not create a genuine dispute for trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (summary judgment should be granted over non-moving party's implausible arguments). For these reasons, summary judgment should be granted for Reading Eagle on retaliation.

## IV. CONCLUSION

Based on the foregoing, I will grant the defendant's motion for summary judgment.

An appropriate Order follows.